620 A.2d 589

**Susan J. BELL, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (ALLEGHENY COUNTY HOUSING AUTHORITY), Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 15, 1992.

Decided Jan. 19, 1993.

638

Neal R. Cramer, for petitioner.

John D. O'Brien, for respondent.

Before McGINLEY and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

Susan Bell (Claimant) petitions for review of the August 28, 1991 order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's decision suspending her workmen's compensation benefits under section 413(a) of The Pennsylvania Workmen's Compensation Act (Act).[1] We reverse and remand.

Claimant was employed by the Allegheny County Housing Authority (Employer) as a security officer. On November 5, 1988, she sustained multiple body bruises and a back sprain when she was physically assaulted by a group of residents during the course of her employment. Pursuant to a notice of compensation payable, she received temporary total disability benefits. On March 15, 1989, Employer filed a petition for termination, alleging that Claimant had been released for work by her treating physician on February 6, 1989 but had not returned to her job. (R.R. at 4a.) Claimant filed a timely answer, denying Employer's allegations and averring that as a result of her original injury, she remained totally disabled from performing her previous job duties. (R.R. at 5a.)

The referee held four hearings, after which she ordered Employer to pay Claimant temporary total disability from February 6, 1989 through July 25, 1989, because Employer

1. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 772.

had not offered Claimant light duty work for that period. Effective July 26, 1989, the referee suspended Claimant's compensation indefinitely into the future, concluding that she had recovered sufficiently to return to her old job, but refused to do so. The Board affirmed.

■ On appeal,[2] Claimant argues that the referee erred by (1) rejecting the uncontested testimony offered by Claimant's medical witness; (2) imposing a heightened burden of proof on Claimant;[3] (3) failing to require Employer to prove that Claimant's work-related disability had ended; and (4) failing to admit the report of Stuart S. Burstein, M.D., into evidence.[4]

■ First, Claimant asserts that the referee erred by rejecting the uncontested evidence of Claimant's physician, Michael Brody, M.D., in which Dr. Brody stated that Claimant was unable to return to work because she continued to suffer from psychiatric disability resulting from her physical injury. Following the assault, Claimant was referred to the Pain Evaluation and Treatment Institute, where she underwent a program of physical therapy and psychological counseling. (R.R. at 107a.) After eight sessions, Dr. Brody interviewed Claimant and diagnosed Claimant's condition as post-traumatic stress disorder *secondary* to the work-related physical

2. Our scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, an error of law was committed or whether there has been a violation of constitutional rights. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988). Appellate courts do not reweigh the evidence or review the credibility of witnesses. A reviewing court simply determines whether, upon consideration of the evidence as a whole, the Referee's findings have the required measure of support in the record. *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Shinsky)*, 492 Pa. 1, 421 A.2d 1060 (1980).

3. Employer contends that Claimant has waived this issue by failing to raise it as an error of law before the Board. Pa.R.A.P. 1551; *Santarelli v. Workmen's Compensation Appeal Board*, 113 Pa.Commonwealth Ct. 281, 537 A.2d 894 (1988). We disagree. Claimant preserved this issue by including it in her Appeal from Referee's Findings of Fact and Conclusions of Law. (R.R. at 198a–99a.)

4. Because we decide this case based upon the first two issues, we need not address the other issues raised.

injury and adjustment disorder with mixed emotional features, *secondary* to the work-related physical injury. At the hearings before the referee, Dr. Brody testified that Claimant would require long term counseling and that she should not return to her original job because she would be a danger to herself and others if she returned. Dr. Brody testified:

A. Ms. Bell reports, first of all, exaggerated responses to loud noises or violence, and those responses would potentially lead to, potentially resorting to shooting somebody rather than trying to work through an altercation in an effort to avoid another assault.

It could potentially result in abandonment of a colleague in a dangerous situation so that really the victim, her colleagues and herself would be at danger.

(R.R. at 93a.)

On cross-examination, Dr. Brody stated:

A. I think first we need to decide what we're talking about in terms of return to work. If you're referring to return to work as a field officer, then, yes, there are specific indications for her not to return, and as I mentioned earlier, I don't feel that it's useful, specifically, to say whether it's a physical or psychological limitation.

(R.R. at 126a.)

Employer countered by presenting the testimony of Lawrence Kasdan, M.D.. Dr. Kasdan did not perform a psychological evaluation of Claimant, and when asked, could not render an opinion regarding Claimant's psychological status. In determining that Claimant could return to work, Dr. Kasdan presented evidence only as to Claimant's physical capabilities. Thus, Dr. Brody's testimony with regard to Claimant's psychological disability remained uncontested. Nevertheless, the referee found:

13. The referee finds the testimony of Dr. Kasdan as more credible and persuasive than that of Dr. Brody, except as specifically noted above.[5]

5. This limitation refers to the date of the full duty release. Although Dr. Kasdan released Claimant to return to her regular position as of February 20, 1989, the referee found that Claimant could not return to

14.   The Referee finds further that Claimant did not establish that she has a work related psychiatric impairment that would preclude her from working.   Her activities on the date of injury were no more than Claimant's response to normal or usual working conditions.

(Referee Findings of Fact Nos. 13, 14;  R.R. at 195a.)

■■■■■   As the ultimate factfinder, the referee must determine issues of credibility and may accept or reject any testimony, including the medical opinion of an expert witness in whole or in part.  *Kovalchick Salvage Company v. Workmen's Compensation Appeal Board (Williams)*, 102 Pa.Commonwealth Ct. 562, 519 A.2d 543 (1986).   In fact, a referee may reject even uncontested medical testimony if that testimony is found to be equivocal.  *Haney v. Workmen's Compensation Appeal Board,* 65 Pa.Commonwealth Ct. 461, 442 A.2d 1223 (1982).   Because Dr. Kasdan offered no testimony regarding Claimant's psychological condition, the referee's credibility determination necessarily relates only to Claimant's physical ability, and so cannot provide grounds to reject Dr. Brody's assertion of psychic disturbance nor form the basis for the referee to refute the work-relatedness of Claimant's psycho-

her pre-injury job until July 26, 1989.   In this connection, the referee made the following credibility findings:

6.   Dr. Kasdan testified on Defendant's behalf and the Referee credits his testimony, reports and opinions contained therein as credible and as fact with the exception of the full duty release.

7.   Dr. Kasdan evaluated the claimant on February 3, 1989 and found her physical examination to be normal with no evidence of weakness or sensory change.   Claimant was released to return to work on February 6, 1989 with a light duty restriction for two weeks. Claimant was released for full duty effective February 20, 1990 [sic].

10.   The Referee credits Claimant's testimony at the initial hearing (on May 1, 1989) regarding the pain in her lower back which radiated into her legs.   Dr. Brody testified Claimant reported a 60–70 percent reduction in pain at the time of his interview (July 26, 1989) and the Referee finds that to be fact.

13.   The Referee finds the testimony of Dr. Kasdan as more credible and persuasive than that of Dr. Brody, except as specifically noted above.

(Referee Findings of Fact, Nos. 6, 7, 10 and 13;  R.R. at 193a–95a.)

logical disability.[6] Without a determination regarding the equivocality of Dr. Brody's testimony, the referee's simple rejection of that testimony is reversible error. *Haney.*

Moreover, because she determined that Claimant failed to prove abnormal working conditions, the referee specifically found that Claimant failed to establish that her psychiatric impairment was work-related. In doing so, the referee appears to have viewed Claimant's allegation of psychological injury as an entirely new and purely psychological injury claim. Accordingly, the referee applied the heightened burden of proof required in cases where psychic disability has no physical source. Here again, the referee erred.

Claimant does not allege a new injury; rather, she contends that she sustained a psychiatric disability as a direct result of her work-related physical injury. Post-traumatic psychological disabilities brought about by work-related physical injuries are compensable. *Sibrava v. Workmen's Compensation Appeal Board,* 113 Pa.Commonwealth Ct. 286, 537 A.2d 75 (1988). If a work-related psychological disability is associated with a physical injury, the claimant must prove only the basic requirements of workmen's compensation eligibility; i.e., that the injury arose in the course of employment and was related thereto. *Sibrava.*

We have recognized that disabilities involving both mental and physical elements can be divided into three categories:

1. the mental/physical case, in which a psychological stimulus causes a physical injury;

6. In fact, we note that Dr. Kasdan and Dr. Brody both agreed with regard to Claimant's physical capabilities. However, Dr. Brody testified that, although physically capable of returning to her prior job duties, Claimant was psychologically unable to return to work as a result of her assault. On the other hand, because he had performed no psychological evaluation of Claimant, Dr. Kasdan refused to speculate on Claimant's psychological condition or its cause. Thus, we cannot presume an absence of psychological disability simply because the referee credited Dr. Kasdan as a more credible witness. We have no way of knowing how, or indeed whether, Dr. Kasdan's assessment of Claimant's psychological condition would have differed from Dr. Brody's, had he made the same sort of psychiatric appraisal.

2. the physical/mental case, in which a physical stimulus causes a psychic injury; and

3. the mental/mental case, in which a psychological stimulus causes psychic injury.

*Boeing Vertol Co. v. Workmen's Compensation Appeal Board (Coles),* 107 Pa.Commonwealth Ct. 388, 528 A.2d 1020 (1987), *appeal denied,* 517 Pa. 619, 538 A.2d 501 (1988).

Because of the increased difficulty of obtaining adequate proof in the third category of cases, a claimant alleging a mental/mental disability must establish that his psychological injury and resulting disability were caused by abnormal working conditions, rather than his own subjective perception of working conditions. *Martin v. Ketchum, Inc.,* 523 Pa. 509, 568 A.2d 159 (1990). However, Claimant here claims to have suffered a disability which falls into the second category, where the burden of proof is substantially reduced. If the referee had found Dr. Brody's testimony unequivocal, and our review of that testimony indicated no hint of equivocation,[7] she would have been forced to apply the physical/mental standard of *Sibrava.* However, the referee did not address the credibility of Dr. Brody's testimony concerning Claimant's psychological condition and made no finding of equivocality in this regard.

Accordingly, we reverse the order of the Board, and remand for further findings and application of the proper burden of proof.

---

7. In this connection, we hold that Referee Finding of Fact No. 9(b) is not supported by substantial record evidence. That finding states that "[Dr. Brody] did not testify that Claimant was disabled from her work as a housing officer." Dr. Brody's testimony in the record contradicts this finding. Dr. Brody stated unequivocally that Claimant has work-related post-traumatic stress disorder and that she should not return to her work as a field officer (R.R. at 92a–93a; R.R. at 126a). Dr. Brody asserted continuously that Claimant was not psychologically ready to return to her former position and that she should be in a less stressful position. (R.R. at 93a.) Although Dr. Brody did state that Claimant could *physically* perform her previous tasks, this cannot support the referee's finding in light of the rest of Dr. Brody's testimony. Medical evidence must be considered as a whole, and reliance on portions of testimony taken out of context is inappropriate. *Lewis v. Workmen's Compensation Appeal Board,* 508 Pa. 360, 498 A.2d 800 (1985).

## ORDER

AND NOW, this 19th day of January, 1993, we reverse the order of the Workmen's Compensation Appeal Board, dated August 28, 1991, and remand this case for further findings, for a determination of disability under the correct burden of proof stated herein and for entry of an order consistent with this opinion.

Jurisdiction relinquished.

SILVESTRI, Senior Judge, dissents.