**Mary RYAN, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (COMMUNITY HOME HEALTH SERVICES), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 1, 1996.

Decided April 15, 1996.

Reargument Denied May 31, 1996.

Timothy B. Kiser, for Petitioner.

Anthony J. Bilotti, for Respondent.

Before COLINS, President Judge, and FLAHERTY, J., RODGERS, Senior Judge.

COLINS, President Judge.

Mary Ryan (Claimant) petitions for review of the October 17, 1995 order of the Workmen's Compensation Appeal Board (Board) that sustained the appeal of Community Home Health Services (Employer) and reversed the decision and order of a workers' compensation judge (WCJ). Claimant's one issue presented for this Court's review is whether the Board erred in reversing the WCJ's decision because the WCJ's decision is supported by substantial evidence and free from legal error.[1]

The facts of this case are summarized as follows. Claimant was involved in a work-related automobile accident on February 27, 1990. A notice of compensation payable was executed on May 1, 1990, acknowledging Claimant's injuries of a fractured right patella, a bruised arm, and a chest injury. Claimant returned to work on April 30, 1990, and executed a final receipt on May 14, 1990. On October 23, 1992, Claimant filed a petition to review alleging the notice of compensation should be amended to reflect that she has suffered a work-related mental disability as a result of her February 27, 1990 work-related injury. Claimant also filed, on October 23, 1992, a petition to reinstate compensation benefits as of February 2, 1992.[2]

The WCJ found the following facts. Claimant began to experience depression in the summer of 1991 when she learned that the driver of the other automobile involved in the work-related automobile accident of February 27, 1990 had instituted litigation against her. Claimant also learned that the other driver suffered severe head injuries in the accident. By the autumn of 1991, Claimant began having nightmares about the accident, and she sought treatment in December of 1991. Claimant increased her consumption of alcohol as a result of learning of the injuries sustained by the other driver.

Claimant ceased working on February 3, 1992 after she was discovered drinking on the job. On March 1, 1992, Claimant overdosed on anti-depressant pills and was hospitalized for 13 days. In January of 1993, Claimant was in a non-work-related automobile accident. While she suffered no physical injuries, she became more upset and her depression worsened because the accident reminded her of the prior automobile accident. Claimant experienced anxiety attacks after this second accident and stopped driving for three months. On February 3, 1993, Claimant returned to work.

At the hearings before the WCJ, Claimant presented the medical testimony of Bernard Sobel, M.D. and Robert Toborowsky, M.D. Dr. Sobel, a board-certified psychiatrist, tes-

---

1. When reviewing Board decisions, this Court is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

2. Claimant also filed a penalty petition, which was dismissed because employer's contest was determined to be reasonable. This has not been appealed.

tified that Claimant suffered from dysthymic disorder, alcohol abuse, and a possible personality disorder; he was unable to pinpoint with any degree of medical certainty the cause of Claimant's mental disorders. Dr. Toborowsky, a board certified psychiatrist, testified that Claimant suffered from a delayed post-traumatic stress disorder that was causally related to the February 27, 1990 automobile accident. Dr. Toborowsky opined that the work-related accident and Claimant's knowledge of the severe problems of the other driver were the triggering events of Claimant's condition. Dr. Toborowsky further opined that Claimant remained vulnerable to problems after the 1990 accident and remained disabled from the summer of 1991 through her time at Westmeade Center in March 1992. The testimony of both Dr. Sobel and Toborowsky was accepted as credible and persuasive by the WCJ. Employer presented the testimony of Timothy J. Michals, M.D., a psychiatrist, whom the WCJ rejected insofar as his testimony conflicted with that of Drs. Toborowsky and Sobel.

Based on these facts, the WCJ further found that Claimant sustained a psychic injury in the nature of depression on February 27, 1990. Consequently, amendment of the notice of compensation payable was allowed in order to reflect this injury. The WCJ also found that Claimant sustained a recurrence of her original injury in the nature of depression on February 3, 1992 through February 2, 1993. Reinstatement of compensation for that period was granted.

Employer appealed to the Board, which reversed the WCJ's decision, concluding that the record does not support the WCJ's findings that the Claimant's psychic injury was caused by the physical stimulus of the work-related automobile accident, but instead was caused by a psychological stimulus, i.e., the lawsuit filed against her by the driver of the other car involved in the accident. The Board concluded that because the psychic injury was caused by a psychological stimulus, and because Claimant did not present evidence of abnormal working conditions, she did not sustain her burden of proof. The Board further concluded that even though the physical injuries arose as a consequence of the work-related automobile accident, the causal relationship between the psychic injury and the car accident is "tenuous at best." (Board Opinion at 10.) Last, the Board concluded that the particular factors causing Claimant's psychic injury are not related to her employment.

In her brief to this Court, Claimant argues that the Board committed an error of law because Claimant presented unequivocal and credible medical testimony to establish that her psychic injury is related to her work-related automobile accident. Specifically, Claimant argues that the medical testimony unequivocally proves that the cause of her mental injury is post-traumatic stress disorder causally related to her February 27, 1990 automobile accident, a physical stimulus. Thus, Claimant concludes that because the unequivocal, credible medical testimony establishes that her psychic injury has as its origin the physical stimulus of the automobile accident, and not the psychological stimulus of the filing of the lawsuit filed against her, the Board erred in considering the appeal under the more difficult standard of proof associated with the psychological stimulus cases.

■ We begin by noting that disabilities involving both mental and physical elements are divided into three categories: 1) the mental/physical case, in which a psychological stimulus causes a physical injury; 2) the physical/mental case, in which a physical stimulus causes a psychic injury; 3) the mental/mental case, in which a psychological stimulus causes psychic injury. *Bell v. Workmen's Compensation Appeal Board (Allegheny County Housing Authority)*, 152 Pa.Cmwlth. 636, 620 A.2d 589 (1993). The WCJ concluded that the case *sub judice* presents the physical/mental scenario, specifically finding that the physical stimulus of the February 27, 1990 automobile accident caused the post-traumatic stress disorder that disabled Claimant for the period in question. (WCJ Findings of Fact Nos. 5j, 10.) In so finding, the WCJ relied upon the credible testimony of Dr. Toborowsky. (WCJ Finding of Fact No. 8.) Because the Board took no additional evidence, our review is limited to determining whether the

WCJ's findings are supported by substantial evidence.

■ Dr. Toborowsky opined that Claimant suffered from a post-traumatic stress disorder of the delayed type, which disabled her during the relevant period. (Deposition of Robert M. Toborowsky, M.D., 7/20/93, at 25–29, 31–32, 34–39). Dr. Toborowsky further opined that this post-traumatic stress disorder was causally related to the work-related automobile accident. (*Id.* at 33).

The Board has chosen to rely on a portion of Dr. Toborowsky's testimony that purportedly relates Claimant's depression to the legal proceedings initiated in the summer of 1991 and associated with the work-related automobile accident. However, Dr. Toborowsky's testimony, when reviewed in its entirety, clearly establishes that this statement is consistent with his diagnosis of delayed post-traumatic stress disorder. Specifically, Dr. Toborowsky testified as follows on direct examination by Claimant's counsel:

There are basically two kinds of post traumatic stress disorder [sic]. There's an immediate which occurs within days of the—maybe even hours of the event. And then there is a delayed form which we saw in many vietnam [sic] era veterans who didn't have any difficulty in many months or in some cases years after their war experience.

In this situation, I believe we're dealing with a delayed form of the disorder. And what Ms. Ryan reported to me was that beginning sometime in the summer or fall of 1991 she began to have cold sweats, to have palpitations.

(*Id.* at 25.) Employer's counsel questioned Dr. Toborowsky on cross-examination regarding the onset of the post-traumatic stress disorder as follows:

Q: Did she tell you that the fact that she was being sued and being harassed that she felt—strike that.

Was that what brought on the depression, and the anxiety, and the loss of sleep the fact that she was being sued and being harassed?

A: I think the process, as I understood it, from her had the effect of initially making her think alot [sic] about the accident and then it kind of built up ahead [sic] of steam and developed into what I believe was a full blown post traumatic stress disorder and depression.

. . . .

Q: The development—did the depression and the loss of sleep and the anxiety develop after she learned that she was being sued?

A: Chronologically in time. Chronologically in time, sure.

. . . .

Q: And that's also with the anxiety and the loss of sleep occurred around the same time period?

A: That's when it began.

Q: And then she told you that she began to have upsetting dreams and reminders of that accident; is that correct?

A: Yes.

(*Id.* at 43–46).

On redirect examination, Claimant's counsel questioned Dr. Toborowsky as follows:

Q: Doctor, is delayed post traumatic stress disorder uncommon in car accident victims?

A: No, it is not.

Q: Doctor, I'd also like you to assume that the other person that was involved in this case suffers permanent brain damage as a result of the injuries she sustained and that Mary Ryan testified that she was unaware of that fact until after she received notification of the lawsuit by that person in this case. Assuming those facts to be true would those precipitating factors be a substantial cause for causing post traumatic stress disorder?

A: They would be the kinds of additional factors that would increase the likelihood of a post traumatic stress disorder.

(*Id.* at 84–85) On re-cross examination, Employer's counsel questioned Dr. Toborowsky as follows:

Q: Doctor, Mary Ryan never reported to you that the person in the other vehicle

sustained permanent brain damage did she?

A: She reported that the other woman was significantly injured. I don't recall whether she used the term brain damage. I don't believe she used the term brain damage. She did tell me she did learn that the other woman was very injured.

(*Id.* at 85–86.)

As an appellate court, we, like the Board, must review the record in its entirety to determine whether the WCJ's findings are supported by substantial evidence. We have painstakingly done so in this case, and we agree with the Claimant that the Board usurped the province of the WCJ by making its own findings of fact. Dr. Toborowsky's testimony in its entirety constitutes substantial evidence to support the WCJ's facts regarding the relation of Claimant's psychic injury of post-traumatic stress disorder to the work-related physical injury. Therefore, those facts are binding upon the Board, and are binding upon this Court, for purposes of review.

Based on the above, the WCJ was correct in her imposition of the burden of proof associated with the physical stimulus/psychic injury cases. In *Bell*, this Court held that "[i]f a work-related psychological disability is associated with a physical injury, the claimant must prove only the basic requirements of workmen's compensation eligibility; i.e., that the injury arose in the course of employment and was related thereto." *Id.* at 593 (citations omitted).

Based on the testimony of Dr. Toborowsky, which was accepted as credible by the WCJ, we conclude that the WCJ correctly determined Claimant sustained her burden of proving a physical, work-related stimulus (the automobile accident) caused her to be disabled by a psychic injury (post-traumatic stress disorder).

Accordingly, the order of the Board is reversed.

### ORDER

**AND NOW,** this 15th day of April, 1996, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is **REVERSED.**