**Thomas DONOVAN, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ACADEMY MEDICAL REALTY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 3, 1999.

Decided Oct. 27, 1999.

Louis J. Ruch, Philadelphia, for petitioner.

Mary T. Uhlig, Philadelphia, for respondent.

Before McGINLEY, J., KELLEY, J., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Thomas Donovan (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a workers' compensation judge (WCJ) denying Claimant's claim petition seeking compensation for a work-related mental disability. We reverse and remand.

On October 16, 1992, Claimant filed a claim petition alleging that he suffered a disabling mental injury as a result of accidentally being stuck by hypodermic needles while at work. Claimant's employer, Academy Medical Realty (Employer), opposed the petition. Following a hearing, the WCJ issued a decision granting the claim petition and awarding partial disability benefits commencing on May 24, 1992.[1] Employer appealed to the Board and later filed a petition for suspension or modification alleging that Claimant was able to return to work as of April 13, 1994. Employer's request for a supersedeas was denied.

On February 24, 1995, the Board issued a decision vacating the WCJ's decision and remanding the matter to the WCJ to make findings on the issue of notice and directing the WCJ to review the evidence under the "mental/mental" standard of review. The WCJ had initially determined that the evidence demonstrated that Claimant suffered a "physical/mental" injury.[2] On remand, the record was reopened and additional evidence received. Evidence was also received regarding Employer's sus-

---

1. Claimant requested only partial disability benefits because he was working at the time as a part-time maintenance supervisor for a church.

2. Our Courts have recognized three different categories of psychological injuries that may be compensated under the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1–1041.4; 2501–2626. These are, in shorthand form, the mental/physical, the physical/mental, and the mental/mental. *Ryan v. Workman's Compensation Appeal Board (Community Health Services)*, 550 Pa. 550, 707 A.2d 1130 (1998). The mental/physical injury arises where a work-related mental stimulus results in a disabling physical injury; the physical/mental injury arises where a work-related physical stimulus results in a disabling mental or psychic injury; and the mental/mental injury arises where a work-related mental stimulus results in a disabling mental or psychic injury. *Id.* The mental/mental category places a higher burden of proof upon the claimant, *i.e.*, the claimant must prove that the mental stimulus causing the mental disability was the result of objectively determined "abnormal" working conditions. *Id.*

pension/modification petition, which was consolidated with the claim petition proceedings. After the close of the record on remand, the WCJ made the following relevant and unchallenged findings of fact.

Claimant was employed by Employer as a janitor for Employer's medical building. His job duties included vacuuming and emptying trash, but did not include emptying medical waste. Between 1990 and 1992, however, Claimant on three occasions came into contact with improperly disposed of medical waste, namely hypodermic needles that had been used during root canal work at a dentist's office. On two of these occasions, Claimant was stuck in the hand by a needle while emptying trash in the dentist's office. On both occasions, Claimant reported the injuries to Employer. Claimant received treatment from medical personnel at the office building in the form of booster shots and blood work.

After the second incident, Employer sent a letter to the dentist with regard to the injury. This letter stated in part:

Our maintenance employee, Thomas Donovan, was treated today after having been stuck by a syringe needle during the routine disposal of non-hazardous waste from receptacles in your office. He has had a similar occurrence approximately one year ago in your office as well, requiring treatment at that time.

As you are probably aware, a State of Pennsylvania law was passed in April 1988, 25 PA Code CHS 271, 273, 283 and 285, calling for the proper disposal of biohazardous waste in appropriate containers by a licensed waste disposal company.

WCJ's Finding of Fact No. 1(d).

After the second incident in September 1991, Claimant became anxious and fearful of working in the dentist's office. He experienced a "change in his mental outlook, which included feelings of panic, nausea, and nightmares." WCJ's Finding of Fact No. 1(e). In March 1992, Claimant dreamed that his wife was chasing him with a needle and woke up from the dream punching his wife. As a result of this incident, Claimant sought medical treatment with physicians at the medical office where he worked. He was advised to seek psychiatric treatment.

In March 1992, Claimant began treating with Richard W. Cohen, M.D., a psychiatrist, who treated Claimant with therapy and medications. Claimant continued to work but with difficulties. Claimant informed Employer that he was treating with Dr. Cohen because of the needle stickings and the episode with his wife.

In May 1992, Claimant performed an extensive cleaning of the dentist's office. While at another doctor's office, the office staff informed Claimant that there was a clicking noise coming from his duster. Upon inspection, Claimant found a hypodermic needle inside the duster. Although Claimant was not physically injured by the needle, he "felt shaken up." WCJ' Finding of Fact 1(h).

On May 15, 1992, Employer told Claimant that he was being fired for poor work performance. His last day of work was May 23, 1992. Claimant continued to maintain his part-time job at the church.

Dr. Cohen testified on Claimant's behalf in 1992 and, on remand, in 1995. He initially examined Claimant on March 10, 1992 where Claimant related his experience of being stuck by needles at work. Claimant also informed Dr. Cohen that because of the needle incidents he experienced fears, restlessness, insomnia and early morning waking, nightmares when sleeping, a decrease in energy and concentration, and an inability to function well at work. Dr. Cohen diagnosed Claimant as suffering from a dysthymic disorder or depression caused principally by the work incidents where Claimant was stuck by inappropriately disposed of needles. Dr. Cohen also opined that Claimant's psychiatric condition greatly impaired his ability to function at his job with Employer.

Dr. Cohen treated Claimant with psychotherapy and anti-anxiety and anti-depressant medications. He testified that Claimant's condition improved after Claimant stopped working for Employer. Claimant's depression continued, but he was less anxious. Dr. Cohen opined in 1992 that Claimant was totally disabled from his pre-injury job with Employer but that he could function in another type of work.

In 1995, Dr. Cohen testified that Claimant continued to receive psychotherapy and psychotropic medications and that he continued to suffer from depression, anxiety, insomnia, poor concentration, and decreased energy. He further testified that he encourages Claimant to seek some form of employment, but that he feels it would be difficult for Claimant to work because of his depression.

The WCJ accepted the testimony of Claimant and Dr. Cohen as more credible and persuasive than the testimony offered by Employer.[3] The WCJ therefore concluded that Claimant suffered a work-related psychiatric injury. Nevertheless, the WCJ determined that Claimant failed to prove his eligibility for benefits under the Act because he failed to present "corroborating evidence" that "being exposed" to hypodermic needles is an abnormal working condition for janitors working in medical office buildings. The WCJ concluded that Claimant was required to present such corroborating evidence in order to establish a mental/mental psychiatric injury compensable under the Act. Accordingly, the WCJ denied Claimant's claim petition.[4] The Board affirmed, and this petition for review followed.

■ This Court's scope of review is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence or whether an error of law or a constitutional violation occurred. *Columbo v. Workmen's Compensation Appeal Board (Hofmann)*, 162 Pa. Cmwlth. 307, 638 A.2d 477 (1994). Claimant argues that the WCJ erred by (1) requiring that Claimant prove a mental/mental injury when the evidence demonstrated that a physical/mental injury occurred, and (2), in the alternative, finding that Claimant had not met the heightened burden of proof under the mental/mental standard.

■ Employer argues that Claimant waived his first argument by not raising it before the Board and by not specifically stating it in his petition for review to this Court. This is a close issue. Rule 1551 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1551, provides that a reviewing court may not consider issues not raised before the governmental unit. The WCJ and Board did, however, directly and fully address the issue of whether Claimant's action was reviewable under the mental/mental or physical/mental theory of psychiatric injury. Although Claimant did not raise the issue a second time before the Board, the Board had made its ruling, and thus the issue has arguably been preserved for our review. Pa.R.A.P. 1513(a) provides that a petitioner before this Court need only make a general statement of objections to the order under review, and that these general objections shall be deemed to include every subsidiary question fairly comprised therein. Claimant's petition for review alleges that the Board's decision is based generally upon errors of law and, in a more specific objection, that it was error to conclude that Claimant did not sustain a work-related psychological injury caused by abnormal working conditions. It is debatable,

---

3. The WCJ noted that Dr. Cohen's testimony was supported in part by that of one of Employer's medical witnesses who opined that Claimant suffered from depression and should be restricted from performing janitorial work in a medical environment.

4. Because of this disposition, the WCJ declined to make findings of fact and conclusions of law with regard to Employer's evidence presented in support of its modification/suspension petition.

therefore, whether the more specific issue of whether Claimant proved a physical/mental injury is fairly comprised within Claimant's general objections.

 Regardless, this Court may not ignore a glaring error of law relating to the application of an incorrect legal standard upon the very issue before us. In examining questions of law, our review is plenary. *Tomaskevitch v. Specialty Records Corp.*, 717 A.2d 30 (Pa.Cmwlth.1998). Even when neither party raises the issue, we may review a case upon the correct legal principles that apply in fulfillment of our review function. *See Mayo v. Lichtenwalner*, 125 Pa.Cmwlth. 137, 557 A.2d 798 (1989). We must exercise our appellate review consistent with established precedent. *Burger v. Zoning Hearing Board of the Municipality of Penn Hills*, 86 Pa. Cmwlth. 601, 485 A.2d 879 (1984). Therefore, we will review the merits of Claimant's first issue.

 Here, the Board vacated the WCJ's original order by holding that in order for a claimant to be eligible for benefits for a psychiatric disability based upon the physical/mental theory, the claimant must prove that the physical injury causing the subsequent mental disability also resulted in a simultaneously continuing physical disability. This is clearly not a correct reading of the law. A claimant need not prove that he or she suffered a physical *disability* that caused a mental disability for which he or she may receive benefits. Nor must a claimant show that the physical injury continues during the life of the psychic disability. Rather, a claimant need only show that a physical *stimulus* resulted in a mental disability. *Ryan; Gulick v. Workers' Compensation Appeal Board (Pepsi Cola Operating Co.)*, 711 A.2d 585 (Pa.Cmwlth.1998); *Bell v. Workmen's Compensation Appeal Board (Allegheny County Housing Authority)*, 152 Pa.Cmwlth. 636, 620 A.2d 589 (1993);

*Boeing Vertol Co. v. Workmen's Compensation Appeal Board (Coles)*, 107 Pa. Cmwlth. 388, 528 A.2d 1020 (1987), *petition for allowance of appeal denied*, 517 Pa. 619, 538 A.2d 501 (1988).[5] "A claimant alleging a mental injury from a physical stimulus need only demonstrate that the physical stimulus caused the injury." *Gulick*, 711 A.2d at 588. A claimant suffering a physical/mental injury need only prove that the injury arose in the course of employment and was related thereto. *Bell.*

The Board based its holding upon an interpretation of *Washington Steel Co. v. Workmen's Compensation Appeal Board (Argo)*, 167 Pa.Cmwlth. 294, 647 A.2d 996 (1994). In *Washington Steel*, we reversed a WCJ decision that was based upon conflicting findings of fact, wherein the WCJ simultaneously found credible one physician who opined that the claimant's physical injury had resolved and that the claimant could return to work, and found credible another physician who opined that the claimant's mental injury remained and that the claimant could not return to work. We, in turn, based this opinion upon *School District of Philadelphia v. Workmen's Compensation Appeal Board (Coe)*, 163 Pa.Cmwlth. 89, 639 A.2d 1306 (1994), wherein we determined that a referee could not logically accept the claimant's medical evidence that she suffered from a psychiatric disability caused by the *continuing* nature of her work-related physical injury without simultaneously rejecting evidence that the claimant had fully recovered from that injury. In that case, the referee also accepted as true the testimony that the claimant had fully recovered from her work-related physical injury. Thus, by accepting evidence that the claimant's physical injury had resolved, the WCJ could not logically accept as true evidence that the claimant suffered from a psychic injury caused by

---

5. Similarly for a mental/physical injury, the claimant must prove that a mental *stimulus* caused a physical disability. For a mental/mental injury, the claimant must show that a mental *stimulus* caused a mental disability. *Bell; Boeing Vertol.*

the *continuing* prolonged effects of that physical injury.

These cases do not therefore stand for the proposition that in order to prove a physical/mental disability action the claimant must continue to suffer from the work-related injury simultaneously with the mental disability, nor do they hold that the initial physical stimulus must further result in a disability as defined by the Act. Rather, they simply hold that a WCJ may not simultaneously find facts that conflict with one another. In fact, in *Washington Steel*, we distinguished the facts of that case with another case, in which we affirmed the award of benefits for mental disabilities that arose from physical injuries that were clearly not continuing physical disabilities. *See Textron, Inc. v. Workmen's Compensation Appeal Board (Morack)*, 105 Pa.Cmwlth. 273, 523 A.2d 1216 (1987) (the referee found that the claimant developed a fear of work resulting from a serious work-related back injury in 1977 and after returning to work in 1978, culminating in a mental disability in 1982; the referee determined that the 1982 mental disability was a recurrence of the 1977 disability).

■ In this case, the WCJ was correct in his initial determination that Claimant had proved a psychic disability based upon the physical/mental theory. The WCJ accepted as a fact (on remand and before) that Claimant had twice injured himself on hypodermic needles at work to the extent that he sought treatment. The WCJ further found as credible medical testimony that Claimant's psychological illness was based directly on these physical injuries. Therefore, Claimant proved that a work-related physical stimulus resulted in a psychic injury. The WCJ also determined that this injury caused a disability as defined by the Act. It was clear error, therefore, to characterize Claimant's case as one falling under the mental/mental the-

ory of psychiatric disability and to impose the heightened burden of proof required of mental/mental cases.[6]

■ We would further note, however, that even if this case could be characterized as a mental/mental injury case, Claimant would have carried his burden of proof under that theory. In a mental/mental case, a claimant must not only prove that he or she sustained a work-related mental or psychic injury but that an abnormal working condition caused such injury. *Ryan.* The question of whether a claimant has been exposed to abnormal working conditions is a mixed question of law and fact reviewable by this Court. *Gulick.* As our Supreme Court explained, the requirement that a claimant prove the existence of an abnormal working condition is intended:

> [T]o distinguish between psychiatric injuries that are compensable because the necessary causal relationship between the employment and mental disability has been established from those psychiatric injuries that arise from the employee's subjective reactions to normal working conditions. The phraseology 'abnormal working conditions' has developed into a shorthand expression for that critical distinction....

*Martin v. Ketchum, Inc.*, 523 Pa. 509, 518–19, 568 A.2d 159, 164 (1990). *See also Gulick.*

■ Quite often, mental/mental injury cases require independent corroborative evidence to support the claimant's description of the abnormal working environment that caused the mental stimulus resulting in a mental disability. *Martin.* This corroborative evidence is required to show that the claimant is not merely having a subjective response to normal working conditions but is responding to objectively abnormal working conditions. *Id.* In other words, the claimant must show that his

---

**6.** Examples of mental/mental injuries typically involve mental stress from abnormal working conditions resulting in disabling mental illness, such as schizophrenia or panic disorder. *See Ryan.*

injury arose from actual and not merely perceived events. *Philadelphia Electric Co. v. Workmen's Compensation Appeal Board (Miller)*, 164 Pa.Cmwlth. 683, 643 A.2d 1186 (1994).

■ Where, however, actual events are described as occurring and are found to have occurred by the WCJ, then corroborative evidence is not required. *Id.* (meter reader who described attempted attack by vicious dog and threats by the dog's owner who chased the employee with a gun need not produce corroborative evidence of his description of the events causing his mental injury where the WCJ finds that such events did occur); *Monessen, Inc. v. Workmen's Compensation Appeal Board (Marsh)*, 158 Pa.Cmwlth. 502, 631 A.2d 1119 (1993) (employee who described the extraordinary event of being nearly run over by an oiling wheel of a coke oven door, that caused a mental disability, need not present corroborative evidence of this event where the WCJ finds that such event occurred). As we stated: "[w]hile objective evidence may well be necessary where an employee is describing subjective feelings [concerning working conditions], no such evidence is necessary where actual events are being described." *Archer v. Workmen's Compensation Appeal Board (General Motors)*, 138 Pa.Cmwlth. 309, 587 A.2d 901, 907 (1991).

■ In this case, the WCJ found as a fact that Claimant came into physical contact with improperly disposed of medical waste and that this actual event caused Claimant's mental disability. Moreover, the WCJ's Finding of Fact No. 1(d) demonstrates that Employer conceded the occurrence of Claimant's injury from the improperly disposed of medical waste. Thus, this is not a case where an employee seeks compensation from injuries arising from working conditions that may be, without corroborating evidence, merely a subjec-

tive response to normal working conditions but is one based upon actual proven events. Thus, there was no requirement for Claimant to produce corroborative evidence. Of course, under the mental/mental case, a claimant must show that the actual events causing the mental injury were abnormal as a matter of law. In this case, there can be no doubt.

■ We find to be astonishing, if not outrageous, the rather cavalier suggestion, inferred by the WCJ and the Board and advanced by Employer in its argument, that exposure to and wounding by improperly disposed of hypodermic needles are simply part of the normal working conditions of janitors in medical offices. Indeed, the very fact that such experiences are not to be expected or tolerated is conceded by Employer in its letter to the dentist admonishing him for his actions and reminding him that his improper disposal of needles and other medical waste is in violation of the law. WCJ's Finding of Fact No. 1(d).[7] The General Assembly has provided for the imposition of civil and criminal penalties for the disposal of improperly disposed of infectious waste. Sections 1–6 of the Act of July 13, 1988, P.L. 525, 35 P.S. §§ 6019.1–6019.6. Infectious waste includes hypodermic needles and syringes. 25 Pa.Code § 271.1(i)(F). It would be extraordinarily incongruous for this Court to suggest that an entity operating in violation of safety laws of this Commonwealth can provide "normal" working conditions with respect to the areas in violation of the law. This is particularly true where the injured worker is an outside contractor who should be able to presume that medical personnel operate safely and within the confines of the law. The suggestion of the WCJ, the Board, and Employer that a janitor, not responsible for emptying medical waste, must show that it is not normal for such workers to

---

7. Employer also related in its letter that Claimant received treatment because he was stuck with the needle. Medical treatment and testing because of exposure to infectious med-

ical waste can hardly be characterized as "normal" working conditions expected of people who empty office waste.

become impaled on improperly disposed of hypodermic needles is simply absurd and an outrageous distortion of protections afforded injured workers under the Act.

Accordingly, as Claimant has proven a mental disability that has arisen from a work-related injury, the order of the Board must be reversed. Because, however, the WCJ did not make findings of fact and conclusions of law with regard to Employer's modification/suspension petition, this matter must also be remanded to the WCJ to determine the amount of benefits, if any, for which Claimant is eligible.

### ORDER

AND NOW, this 27th day of October, 1999, the order of the Workers' Compensation Appeal Board (Board) in the above-captioned matter is hereby reversed, and this matter is remanded to the Board for further remand to the workers' compensation judge for findings of fact and conclusions of law with respect to the modification/suspension petition filed by Academy Medical Realty and to compute the amount of benefits for which the Petitioner may be eligible.

Jurisdiction relinquished.