# Dancy v. Civil Service Commission of City of Philadelphia

*Michael Gerald Dryden,* for appellee.

*Martin G. Malloy* and *Joseph Patrick Turchi,* for appellant.

CARRAFIELLO, *J.,* January 14, 2004—Appellant, the City of Philadelphia, appeals an order of the Philadelphia Court of Common Pleas dated December 8, 2003, which reversed a decision of the Civil Service Commission of the City of Philadelphia.

## FACTUAL AND PROCEDURAL HISTORY:

The basic facts are not in dispute. Appellee, Mildred Dancy, worked as a prison guard in the Philadelphia prison system. On May 20, 2000, she was responding to an "assist officer" call when a door slammed on her finger, essentially amputating the top third of her right index finger (Officer Dancy is right-handed). She was taken to Franford Hospital's emergency room, and the stump was cleaned and sutured by Dr. Askin, a hand specialist.

Appellee continued to see Dr. Askin and was referred to a psychologist that worked for the city, Dr. Richard M. Ganley. Appellee had been quite disturbed at seeing the bone protruding from her finger and part of her finger lying on the floor. Dr. Ganley initially diagnosed appellee as suffering post-traumatic stress syndrome. He saw her 15 times over the next six months, and cleared her in November for limited duty with some restrictions.

The first restriction was that she not work directly with inmates:

"It's a standard limitation. I don't recall any exceptions. There may have been one or two. When I'm working with correctional officers, when they go back—it is a fairly stressful job working with inmates. And I recommend that they go back, we see how they're doing in a less stressful situation. They often work in the mailroom, they may work guard duty outside of an area, an area where the public is, rather than where the inmates are. And it—it gives us time to address any issues that might come up regarding return to work." (N.T. Ganley deposition p. 43.)

The second restriction asked that the appellee not be assigned to duty with an officer against whom she had filed sexual harassment charges. The third restriction was that the position should be sensitive to the pain from her finger stump.

At his deposition, Dr. Ganley was asked about his diagnosis. He stated that as a result of her injury, he had diagnosed appellee as suffering from post-traumatic stress, but he had changed his initial diagnosis to an adjustment disorder with anxiety. (Ganley deposition pp. 50-51.) The new diagnosis did not appear anywhere in the doctor's notes, and was given for the first time at his deposition on behalf of the city. (Ganley deposition p. 68.) The doctor never explained what an adjustment disorder with anxiety was.

At the time of this accident, appellee was treating with Dr. Kao of the city Compensation Clinic for carpal tunnel syndrome. Dr. Kao examined her twice after the amputation to determine how the stump was healing, and

eventually cleared her medically. However, Dr. Kao limited the duty to a position that involved use of the left hand only, and noted that Dr. Ganley should be consulted to provide any psychological restrictions. (Kao deposition, p. 21.)

In November, appellee was offered a light duty position. Even though it is routine to offer a position in the mailroom or one dealing with the public, appellee was offered a position in Center Control, which is inside the prison proper. It is a glass booth that operates the doors through which prisoners routinely pass. Although separated by glass, it is located in an area readily accessible to the prison population. The prison also assigned her to a shift with the officer she had charged with sexual harassment. The offer violated two of Dr. Ganley's restrictions. The shift was eventually changed, but the position was not. Appellee refused to accept the placement.[1]

Appellee took an appeal to the Civil Service Commission of the City of Philadelphia under Civil Service Regulation 32.11 (duty status) and 32.12 (service-connected disability). Appellee testified before the commission that she feared inmate contact as an altercation might arise and her disfigurement might affect the outcome. (N.T. 1-16-02, p. 71.) She had been told that a position outside of the prison proper would involve carrying a gun, and she could not fire one because of the amputation. She stated she would be willing to accept a position that did not involve inmate contact or carrying a gun. (N.T. pp.

---

1. At one point in the numerous listings of this matter, counsel for appellee was trying to negotiate a light duty position for her that would not involve any contact with the prison population. That obviously did not come to fruition.

73-74.) She noted that the finger was still painful and that the thought of working in Center Control traumatized her and caused her great anxiety.

Appellee started treating with a board-certified psychiatrist, Clancy D. McKenzie, after ending her sessions with Dr. Ganley. Dr. McKenzie was deposed in this matter. He testified that he had practiced for 38 years, and had written a textbook on post-traumatic stress. He had first seen appellee in November of 2001 and had seen her approximately five times when deposed (April 4, 2002). He testified that appellee suffered from post-traumatic stress disorder and major depressive disorder. He found appellee overwhelmed at the thought of working inside the prison, and concluded appellee was unable to work there due to the emotional impact of the work injury. Appellee also introduced the evidence of Dr. Brent Weinerman, who had examined appellee at the request of her attorney. He opined that the pain and the limited motion of her right hand would make dealing with unruly inmates impossible, and she could not return to work in a prison environment.

The city introduced the testimony of Doctors Kao and Gantry and both sides rested. On November 14, 2002, the commission issued an opinion which denied appellee's appeal. Appellee then petitioned for review before a court of common pleas. No further testimony was taken. After a thorough review of the notes of testimony and the briefs of counsel, the court issued an order on December 8, 2003, granting appellee's petition and reversing the decision of the civil service commission. The city filed this timely appeal.

## LEGAL DISCUSSION:

Appellant was asked to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. This is perhaps the fourth appeal taken by the city wherein this directive has not been followed. Counsel filed a statement that consists of 12 pages with 47 numbered paragraphs, only six of which allege error. Much as a statement that is too vague is the functional equivalent of no concise statement at all, *Commonwealth of Pennsylvania v. Dowling,* 778 A.2d 683 (Pa. Super. 2001); *Commonwealth v. Seibert,* 799 A.2d 54 (Pa. Super. 2002), a concise statement which does not readily identify the issues being raised on appeal should be deemed a waiver of those issues. Accordingly, this appeal should be dismissed.

Should the court not exercise its discretion and dismiss this appeal, the court's order should be affirmed on its merits. The court's review of a decision of the civil service commission is limited to examining whether the findings of fact are supported by substantial evidence, the decision is soundly based in the law, and whether constitutional rights have been upheld. See *Bruggeman v. State Civil Service Commission,* 769 A.2d 549 (Pa. Commw. 2001); *Bazargani v. State Civil Service Commission,* 711 A.2d 529 (Pa. Commw. 1998).

The Commonwealth Court has held that section 32 appeals are similar to those brought under the Workers' Compensation Act. Principles enunciated in case law interpreting that Act will apply to section 32 appeals when similar issues are involved. See *Sweed v. City of Philadelphia,* 687 A.2d 59 (Pa. Commw. 1996); *Sammons v. Civil Service Commission of the City of Philadelphia,*

673 A.2d 998 (Pa. Commw. 1996). When an officer is claiming a psychiatric injury, she must show by objective evidence that a psychiatric injury occurred and was not a mere subjective reaction to normal working conditions. *Martin v. Ketchum Inc.,* 523 Pa. 509, 568 A.2d 159 (1990).

Under the Workers' Compensation Act, however, not all psychic injury claims call for the same standard of proof. To establish a claim involving mental/mental injury, the evidence must show that an extraordinary occurrence took place at work which caused the injury, or that abnormal conditions at work over a substantial period of time caused the injury. *Monessen Inc. v. W.C.A.B. (Marsh),* 158 Pa. Commw. 502, 631 A.2d 1119 (1993). If a person is claiming a physical/mental injury, they must prove that a triggering physical injury compensable under the Act caused their psychological disability, and that the injuries arose in the course of their employment and were related thereto. *Bell v. W.C.A.B. (Allegheny County Housing Authority),* 152 Pa. Commw. 636, 620 A.2d 589 (1993).

Appellee claimed a physical/mental injury. The commission applied the standard of review for a mental/mental claim, thus committing an error of law:

"Appellant's [sic] job as a correctional officer involved repeated contacts with dangerous persons. In such an environment, anything could happen and usually does. Even this 'freak' type of an accident, although an extraordinary event, is not outside the realm of possibility. In fact, most jails today have cells which are operated mechanically as well as manually, placing operators at risk of injury in opening and closing them. This work

environment/situation is not abnormal for a correctional officer. Appellant has not met her burden of proof in this case for all the reasons set forth above." (Commission opinion p. 4.)

If one uses the correct standard of review, the evidence clearly establishes that appellee met her burden of showing that she sustained a compensable injury in the course of her employment, and that as a result of that injury, she suffered a psychiatric injury relating directly to the physical injury.

All agree that the end of appellee's finger was cut off by a door in the prison when she responded to a call to assist a fellow officer. As a result of seeing her finger tip lying on the floor and a bone protruding from her finger, appellee appeared traumatized and was referred by the surgeon provided by the city, to a psychologist provided by the city. She was treated by Dr. Gantry for her psychiatric injury (post-traumatic stress syndrome until his deposition) for six months and only cleared to return to limited duty with certain restrictions. Aside from the evidence introduced by appellee, the testimony of the treating physicians provided by the city established appellee's claim. It is the city's position that appellee's failure to take the light duty position that was offered to her precludes her from claiming a disability, as a disability requires a loss of earning power. However, the position offered to appellee did not fit the criteria established by the city's own psychological expert. Her rejection of that position did not adversely affect her claim.

The court did not reach the issue of whether the commission's opinion was based on substantial evidence, as it concluded the commission had committed an error

of law that affected the outcome of the case in applying the wrong standard of review. As such, the court found appellee had met her burden of proof under the proper standard of review, and reversed the decision of the civil service commission. For all the reasons stated above, the order of December 8, 2003 should be affirmed.